**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF WEST VIRGINIA**
**WHEELING**

**ANTHONY SAVAGE,**

       Plaintiff,

v.                                                    Civil Action No. 5:10-CV-126
                                                                    (BAILEY)

**WEST VIRGINIA DEPARTMENT OF**
**HEALTH & HUMAN RESOURCES, and**
**THERESA HAUGHT,**

       Defendants.

<u>**ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**</u>

The above-styled matter came before the Court for consideration of the Defendants' Motion for Summary Judgment [Doc. 42] and Memorandum in Support of Summary Judgment [Doc. 43], filed on July 19, 2012. In their motion, the defendants move this Court for summary judgment against all claims asserted by the plaintiff in his Amended Complaint [*Id.* at 1]. On August 3, 2012, the plaintiff filed his Memorandum in Opposition to Defendants' Motion for Summary Judgment [Doc. 45]. On August 17, 2012, the defendants filed their reply [Doc. 79]. Having been fully briefed on the matter by the parties, this matter is now ripe for review. For the following reasons, this Court will **GRANT** the Defendants' Motion for Summary Judgment [Doc. 42].

I. PROCEDURAL BACKGROUND

On October 28, 2010, the plaintiff filed a complaint in the Circuit Court of Ohio County alleging the following claims: (1) racial discrimination in violation of the West

1

Virginia Human Rights Act (W. Va. Code § 5-11-1 *et seq.*) and Title VII of the Civil Rights Act of 1964 (42 U.S.C. § 2000 *et seq.*) against the West Virginia Department of Health & Human Resources ("DHHR"); (2) racial discrimination in violation of the West Virginia Human Rights Act (W. Va. Code § 5-11-1 *et seq.*) and Title VII of the Civil Rights Act of 1964 (42 U.S.C. § 2000e *et seq.*) against the Teresa Haught; and (3) retaliatory conduct in contravention of substantial public policies of the State of West Virginia against the DHHR [Doc. 1-1].  On November 24, 2010, the defendants removed the case to this Court on the basis of federal question jurisdiction [Doc. 1].  On December 14, 2010, the plaintiff filed an Amended Complaint removing the federal claims from the complaint [Doc. 5].  The Amended Complaint contains (1) allegations of racial discrimination in violation of the West Virginia Human Rights Act against both defendants and (2) a claim of retaliatory conduct in contravention of substantial public policies of the State of West Virginia [*Id.*].  Although the Amended Complaint contained no federal claim, this Court determined that it was "appropriate to exercise its discretion in favor of supplemental jurisdiction" of the remaining state law claims, noting that the state law issues are neither novel nor complex [Doc. 17 at 4-5].

On July 19, 2012, the Defendants filed their Motion for Summary Judgment [Doc. 42] and Memorandum in Support of Summary Judgment [Doc. 43].  In support of their motion, the defendants argue the following: (1) the plaintiff cannot prove a prima facie case of discrimination or disparate treatment; (2) the defendants have a legitimate, nonpretextual reason for not promoting the plaintiff; (3) there is no evidence that the stated reasons for Mr. Butler's promotion are false or that discrimination was the reason Mr. Butler was hired; (4) the plaintiff cannot prove a prima facie case of disparate impact; and (5) there is no

evidence of retaliation [Doc. 43]. On August 3, 2012, the plaintiff filed his opposition [Doc. 45] to the motion for summary judgment. In support of his opposition, the plaintiff argues that he has established a prima facie case of discrimination because he believes that his resume and background were marginalized in the decision-making process and that the ranking system is merely a pretextual reason for not promoting him [*Id.*]. The plaintiff further argues that the statistics support a case of disparate impact and that he was retaliated against by not being promoted [*Id.*]. On August 17, 2012, the defendants filed their reply [Doc. 79] in support of their motion for summary judgment. In their reply, the defendants argue the following: (1) the interviews were conducted in an appropriate and legal manner; (2) the plaintiff admitted that he has no evidence of discrimination; (3) the plaintiff has failed to provide any evidence that the stated reasons for the promotion decision are false; (4) the plaintiff failed to establish a disparate impact case; and (5) the plaintiff admitted that no retaliation occurred [*Id.*].

## II. UNDISPUTED FACTS

The plaintiff is an African-American who was hired by the DHHR on March 23, 2000 [Doc. 79-5 at 5; Doc. 45-5 at 5; Doc. 43-1 at 1]. The plaintiff worked in a "Social Service Worker 3" position for the Marshall District until July 2004, when he moved to a district child protection service worker" position [Doc. 43-2 at 2; Doc. 43-3 at 3]. In October 2004, the plaintiff applied for an investigation position [Doc. 43-2 at 1]. He was awarded that position in 2005 [Doc. 43-3 at 2; Doc. 79-5 at 2]. Paul Butler was hired by the DHHR on October 10, 2008 [Doc. 45-5 at 4].

In July 2009, the DHHR issued a notice of a Child Protective Services Supervisor position that listed the various work and educational experience requirements for the

position [Doc. 43-4]. The plaintiff, Paul Butler, and Quentine Payne Jackson, who were all current DHHR employees, applied for the position [*See* Doc. 43-10]. In August 2009, the DHHR held interviews for the position [Doc. 45-5 at 13]. The interviewing panel consisted of the following three individuals: Ronda Colanero, Mickie Hall, and Teresa Haught [Doc. 43-3 at 13-14]. Ronda Colanero was the Regional Director with hiring and appointment authority [Doc. 43-5 at 2]. Teresa Haught and Mickie Hall merely participated as part of the interviewing team [*Id.*].

The panel utilized the same questions for each interview [Doc. 43-7]. The interviewers rated each applicant's interview [Doc. 43-9] and completed a candidate comparison chart after all of the interviews [Doc. 43-8]. The interviewers all ranked the applicants in the following overall order, from highest score to lowest: (1) Paul Butler, (2) the plaintiff, and (3) Quentina Payne Jackson [Doc. 43-11; Doc. 43-12; Doc. 43-14; Doc. 43-15; Doc. 43-16]. As the best-scoring candidate, Paul Butner was offered the position [Doc. 43-13].

### III. APPLICABLE STANDARD

Rule 56 of the Federal Rules of Civil Procedure governs summary judgment. *See* FED. R. CIV. P. 56. Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." **Celotex Corp. v. Catrett**, 477 U.S. 317, 322 (1986); Fed. R. Civ. P. 56(c). A genuine issue exists "if the evidence is such that a reasonable jury could return a verdict for the non-moving party." **Anderson v. Liberty Lobby, Inc.**, 477

U.S. 242, 248 (1986). Thus, the Court must conduct "the threshold inquiry of determining whether there is the need for a trial- whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." **Anderson**, 477 U.S. at 250.

The party opposing summary judgment "must do more than simply show that there is some metaphysical doubt as to the material facts." **Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.**, 475 U.S. 574, 586 (1986). That is, once the movant has met its burden to show absence of material fact, the party opposing summary judgment must then come forward with affidavits or other evidence demonstrating there is indeed a genuine issue for trial. Fed. R. Civ. P. 56(c); **Celotex Corp.**, 477 U.S. at 323-25; **Anderson**, 477 U.S. at 248. "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." **Anderson**, 477 U.S. at 249 (citations omitted).

## IV.  DISCUSSION

### A.  Amended Complaint Count One

In the first count of the Amended Complaint, the plaintiff pursues a racial discrimination claim against the DHHR pursuant to the West Virginia Human Rights Act, West Virginia Code Section 5-11-1 [Doc. 5 at 2]. Although it is not clear from the plaintiff's Amended Complaint that he is alleging both disparate treatment and disparate impact, the parties do discuss both causes of action in their briefs on summary judgment. As such, this Court will address both claims.

#### i.  Disparate Treatment

Under the WVHRA, "discriminate" is defined as "to exclude from, or fail or refuse to

extend to, a person equal opportunities because of race . . ..." W. Va. Code § 5-11-3(h). This act is applicable to a political subdivision acting as an employer. *See* W. Va. Code § 5-11-3(d). To successfully defend against a motion for summary judgment, the plaintiff must make some showing of fact to support her prima facie case. ***Conaway v. E. Associated Coal Corp.***, 178 W. Va. 164, 168, 358 S.E.2d 423, 427 (1986). The prima facie case for discrimination includes three elements: (1) the plaintiff is a member of a protected class, (2) the plaintiff has suffered an adverse employment decision, (3) but for the plaintiff's placement in the protected class, the adverse employment action would not have been taken. ***Conaway***,178 W. Va. at 170, 358 S.E.2d at 429. If the plaintiff establishes the prima facie case, then the burden shifts to the employer to provide a nondiscriminatory reason for the adverse employment decision; if the employer provides such a reason, then the burden then shifts back to the plaintiff to demonstrate that the proffered reason is merely pretextual. *Id.* at 171 and 430.

1. Prima Facie Case of Race Discrimination

In this case, the plaintiff meets the first two elements of a prima facie case because he is African-American and was not granted a promotion. *See* W. Va. Code § 5-11-3(h). As such, plaintiff must establish that he was not promoted based upon his status as an African-American to shift the burden to the employer. *See* ***Conaway***, 178 W. Va. at 170, 358 S.E.2d at 429.

During his deposition, the plaintiff testified that he believes race was "possibly" a factor in the promotion decision [Doc. 79-5 at 5; Doc. 43-3 at 10]. The plaintiff specifically stated that "[he] believed after basically reviewing the information, that [race] was a factor

6

possibly" [Doc. 79-5 at 5; Doc. 43-3 at 6]. Based upon this statement, the plaintiff appears to believe that racial discrimination was merely a possibility. In fact, when questioned about other factors that could have prompted the interviewing panel to select Paul Butler over the plaintiff, the plaintiff replied that he suspected that Paul Butler had a friendly relationship outside of work with management staff and that this could have factored into the decision to hire Paul over the plaintiff [Doc. 79-5 at 6; Doc. 43-17 at 2]. In addition to the plaintiff's stated doubt, the plaintiff testifed in his deposition that he has no evidence indicating any bias or discrimination against African-Americans by any of the three interviewers [Doc. 43-3 at 13]. Accordingly, the plaintiff has not established that the decision to promote someone other than him was based upon the plaintiff's status as an African-American. However, as discussed in the following sections, even if this Court were to determine that the plaintiff has established a prima facie case of discrimination, the plaintiff cannot demonstrate that the DHHR's proferred non-discriminatory reason for its promotion decision was pretextual. *Conaway*,178 W. Va. at 171, 358 S.E.2d at 430.

### 2. Nondiscriminatory Reason

The defendants argue that they relied upon objective data in determining who would be given the promotion [Doc. 43 at 11]. Under this objective data, the plaintiff was ranked second [*Id.*]. Because defendants have provided nondiscriminatory reasons for not promoting the plaintiff, the plaintiff must establish that the provided reason is pretextual. See *Conaway*,178 W. Va. at 170, 358 S.E.2d at 429.

### 3. Pretextual Reason

The plaintiff alleges that the interview scores and rankings are merely pretextual

reasons for the promotion decision because scores are highly susceptible to manipulation to obtain a desired effect. The plaintiff argues that his educational background should have been given more weight than Paul Butler's past supervising experience prior to working with the DHHR. In addition, the plaintiff claims that the interviewers failed to examine performance evaluations, which the plaintiff argues would have indicated that the plaintiff was a better choice than the plaintiff.[1]

### a. Interview Scores

The plaintiff argues that the interview scores are a pretextual reason for the promotion decision because they are subject to manipulation. The plaintiff bases this argument in part upon the fact that he was not hired even though he received high scores in the education category. The plaintiff appears to be arguing that his educational background, particularly his master's degree, should be given more weight than Paul Butler's work experience. However, this Court notes that the job notice does not list a master's degree as a requirement [Doc. 43-4 at 1]. The job notice merely states that "a master's degree in social work may substitute for one year of the required non-supervisory

---

[1]In support of this argument, the plaintiff attached to his response in opposition to the motion for summary judgment certain discovery materials that reflected the following information. In 2000, 2001, 2003, 2005, and 2006, the plaintiff received a "meets expectations" score on his performance evaluations [Doc. 45-1 at 33, 28, 23, 17, and 11]. In 2007, the plaintiff received a score of 2.52 out of 3 on his performance evaluation, which equated to an "exceeds expectations" [Doc. 45-1 at 5]. During his first year of work with the DHHR, Paul Butler received monthly evaluations [Doc. 45-5 at 40-58]; some of these evaluations included negative comments pertaining to his productivity [*Id.* at 48, 50, 55, 57, and 58]. In 2009, Paul Butler received a "good, meets expectations" score on his performance evaluation, which was the highest score listed on that evaluation form [Doc. 45-5 at 59]. In 2010, Paul Butler received a "does not meet expectations" score on his performance evaluation [Doc. 45-4 at 1].

experience" [*Id.*].  Ronda Colanero testified in her deposition that the plaintiff has better educational credentials than Paul Butler [Doc. 45-5 at 33].  However, she stated that was not a sufficient basis for offering someone the position [*Id.*].  In addition, Ms. Colanero stated the plaintiff's answers to the management style raised concerns [Doc. 43-18 at 3].  On the interviewing worksheets, Ronda Colanero, Mickie Hall, and Teresa Haught all noted the plaintiff's difficulty in answering a question pertaining to management styles [Doc. 43-10].  The interviewers noted Paul Butler's supervising experience in other positions prior to working with the DHHR as well as his ability to address the question about managing styles on their worksheets [*Id.*].  In addition, the announcement regarding Paul Butler's promotion noted that he was currently enrolled in a master's program in social work at West Virginia University [Doc. 43-13].  As such, this Court does not find that the DHHR's stated reason for its decision to promote Paul Butler to be pretextual, despite the plaintiff's strong educational background.

In addition, multiple interviewers noted that they were happy that plaintiff applied for the position and believed that he had a good chance of receiving the position.  During his deposition, Mickie Hall stated that he was familiar with the plaintiff prior to the interview and believed that the plaintiff would probably be a good candidate for the position [Doc. 45-5 at 22]. Mickie Hall further stated that it is his recollection that all three interviewers believed that they had good candidates for the position and were particularly happy that the plaintiff applied for the position [*Id.* at 23].  Teresa Haught testified at her deposition that, "for [her], Paul rated higher than any of the other candidates," even though she had gone to the interview with a belief that the plaintiff was a good worker and had a good chance of receiving the position [*Id.* at 17-18].  When questioned about that ranking, Ms. Haught

stated that the following items were some of the reasons that Paul Butler ranked higher than the plaintiff: (1) Paul Butler had a long history of supervision; (2) Paul Butler had a better interview than the plaintiff; (3) Paul Butler appeared to be more enthusiastic about the position; (4) Paul Butler answered some of the questions better than the plaintiff; and (5) Paul Butler has been working in a CPS position in the district [*Id.* at 18; Doc. 43-19 at 3-4]. Teresa Haught also said that, during his interview, Paul Butler was able to "speak to things that [the interviewers] were looking for" [Doc. 43-19 at 3]. As such, despite being aware that the plaintiff is African-American prior to the interview, two of the three interviewers commented that they believed that he had a good chance at receiving the promotion prior to the interview. However, after the plaintiff's difficulty in answering a question about management styles, the interviewers decided that he was not strongest candidate for a supervisor position. As such, this Court does not find that the DHHR's ranking system is a pretextual reason for deciding to not promote an African-American individual.

b. Performance Evaluations

The plaintiff claims that the interviewing panel was required to review the candidates' performance evaluations and failed to do so. The plaintiff testified that he felt that his resume and past performance with the DHHR were "marginalized" and "devalued" because it wasn't considered during the interview process [Doc. 45-5 at 36]. The plaintiff stated in his deposition that, based upon his resume and accomplishments with the DHHR, "it just didn't make any sense [other than] to make a conclusion that there was some type of bias that took place" [*Id.* at 37].

Pursuant to the West Virginia Division of Personnel Employee Performance

Appraisal Policy, information gathered through the performance appraisal/evaluation proceed should be used for a variety of performance-related activities," including personnel decisions such as promotions [Doc. 45-2 at 1].  In addition, the plaintiff cites to the performance evaluation section of Title 143 Series 1 Administrative Rule of the West Virginia Division of Personnel, which states that the "appointing authority shall consider performance evaluations as well as other recorded indicators of performance in . . . making promotion . . . " [Doc. 45-3 at 5].  However, the section of the Administrative Rule that directly pertains to promotions states that the decision for a promotion by competitive examination "shall consist of any combination of the following: written tests, ratings on training and experience, evaluation of recorded service ratings and seniority, performance tests and oral examinations."  Section 11.2 of Title 143 Series Administrative Rule of the West Virginia Division of Personnel.  Accordingly, the DHHR has the discretion to determine that the performance evaluations would not be reviewed prior to the interviews.

All of the interviewers testified in their depositions that they did not review performance evaluations for any of the candidates [Ronda Colanero -Doc. 45-5 at 29, 31; Doc. 79-29 at 2; Mickie Hall - Doc. 79-3 at 3-4; Doc. 45-5 at 24; Doc. 43-6 at 5-6; Teresa Haught - Doc. 45-5 at 14; Doc. 79-4 at 2-3].  Ronda Colanero stated that she did not consider the performance evaluations to be a useful tool in evaluating candidates [Doc. 79-2 at 3].  Ms. Colanero specifically stated that there was no uniform or standardized approach to scoring in performance evaluations, making the scores prepared by different individuals difficult to accurately compare [*Id.* at 3].  Mickie Hall stated that he does not feel that performance evaluations are "necessarily really valid[ ] or consistent" because supervisors do not rank uniformly [Doc. 79-3 at 3-4; Doc. 45-5 at 24; Doc. 43-6 at 5-6].

Teresa Haught testified that it is not protocol to review performance evaluations [Doc. 45-5 at 14; Doc. 79-4 at 2-3].

In addition to the personal beliefs regarding the validity of the performance evaluations as a comparison tool among the candidates, the DHHR does not typically review performance evaluations. Ronda Colanero stated that, "in all the years that [she has] interviewed people for jobs, [the DHHR has] never used their performance evaluation as part of the interview process" [Doc. 79-2 at 3]. Ronda Colanero stated that performance reviews might be examined after interviews if the interviewing panel "felt that two people were really close;" however, it is not routine to otherwise review the performance evaluations [*Id.* at 2-3; Doc. 43-18 at 2]. Ms. Teresa Haught testified in her deposition that, in all her time as a supervisor, she was not taught to review performance evaluations [Doc. 79-4 at 3]. In fact, during the plaintiff's deposition, he stated that the interview process was similar to other interviews that he had for other positions and had no complaints regarding the decisions made as a result of those interview [Doc. 79-5 at 3].

For the foregoing reasons, this Court finds that the decision to refrain from reviewing performance evaluations was within the discretion of the DHHR. Moreover, because the plaintiff has failed to establish that the nondiscriminatory reason provided by the defendants is merely pretextual, the plaintiff's disparate treatment claim against the DHHR fails as a matter of law. Accordingly, the Defendants' Motion for Summary Judgment on the plaintiff's racial discrimination claim with regard to disparate treatment is hereby **GRANTED**.

ii. Disparate Impact

To establish a prima facie case of disparate impact pursuant to the WVHRA, "the plaintiff bears the burden of (1) demonstrating that the employer uses a particular

employment practice or policy and (2) establishing that such particular employment practice of policy causes a disparate impact on a class protected by the [WVHRA]." **Barefoot v. Sundale Nursing Home**, 193 W.Va. 475, 482, 457 S.E.2d 152, 159 (1995) (quoting **West Virginia University v. Decker**, 191 W. Va. 567, 447 S.E.2d 259 (1994)). If the plaintiff establishes this burden, then the employer must prove that the practice or policy is "job related" and "consistent with business necessity." *Id.* At that point, the plaintiff can rebut the business necessity defense by "showing that a less burdensome alternative practice exists which the employer refuses to adopt." *Id.* at 489 and 166.

The plaintiff claims that the interview ranking system is not a neutral hiring process because the two African-American candidates were not hired [Doc. 45 at 14-15]. In addition, the plaintiff claims that the fact that there has been no African-American supervisor in the Hancock/Brooke/Ohio District since 2006 supports a finding that the hiring process causes a disparate impact [*Id.*].

The DHHR's workforce consists of 294 African-Americans [Doc. 45-5 at 8]. This equates to 4.6% of the entire workforce [*Id.*]. In addition, 3.9% of the individuals employed by the DHHR in the same position for which the plaintiff applied are African-American [Doc. 79 at 7]. The defendants argue that, given the fact that 2.2% of the West Virginia population for individuals between the ages of 18 and 65 are African-Americans, these statistics demonstrate that the hiring process does not cause a disparate impact [*Id.* at 8, citing **Pittsnogle v. W.Va. Dept. of Transp.**, 216 W.Va. 224, 229, 605 S.E.2d 796, 801 (2004) (internal citations omitted) ("the proper statistical comparison is between the representation of the protected class in the employer's work force and in the *qualified*

13

population in the labor force, unless the absence of unqualified persons was due in some manner to the employer's practices")]. In addition, the defendants note that the plaintiff was promoted on two other occasions under the same interview ranking system [*Id.*]. This Court finds that the statistics provided by the parties fails to establish that the DHRR's interview process creates a disparate impact on African-Americans. The plaintiff claims that the lack of an African-American individual in a specific position in one district over the last six years is not sufficient to establish a disparate impact claim, particularly in light of the overall statistics for the DHHR. Accordingly, the plaintiff's disparate impact race discrimination claim fails as a matter of law and Defendants' Motion for Summary Judgment on the plaintiff's disparate impact racial discrimination claim against the DHHR is hereby **GRANTED**.

### B. Amended Complaint Count Two

In the second count of the Amended Complaint, the plaintiff pursues a disparate treatment racial discrimination claim against Teresa Haught pursuant to the WVHRA, West Virginia Code Section 5-11-1 [Doc. 5 at 2-3]. The plaintiff alleges that Teresa Haught "was a principal decision-maker in connection with the adverse employment action taken against the plaintiff" [*Id.* at 3]. The plaintiff does not allege that the Ms. Haught influenced the decision or attempted to sway the decision of the other interviewers. As such, the plaintiff appears to simply be suing Ms. Haught for her participation in the decision to promote Paul Butler. In Section IV.A.ii of this Order, this Court discussed Ms. Haught's testimony regarding her belief prior to the interview that the plaintiff would likely receive the promotion and her reasons for ranking Paul Butler higher than the plaintiff after the interview. For these reasons and those more fully articulated in Section IV.A.ii of this Order, this Court

finds that, even if the plaintiff were to establish a prima facie case of racial discrimination, he cannot establish that Ms. Haught's stated reasons for ranking Paul Butler higher than him were merely pretextual. Accordingly, the plaintiff's race discrimination claim against Teresa Haught fails as a matter of law and Defendants' Motion for Summary Judgment on the plaintiff's disparate impact racial discrimination claim against Teresa Haught is hereby **GRANTED**.

### C.  Amended Complaint Count Three

In the third count of the Amended Complaint, the plaintiff pursues a Retaliatory Conduct claim against the DHHR. To establish a common law claim of retaliatory conduct, the plaintiff must show that he engaged in a protected activity and the employer took adverse employment action against the employee for that protected activity. *See* ***Colgan Air, Inc. v. West Virginia Human Rights Comm'n***, 221 W.Va. 588, 597, 656 S.E.2d 33, 42 (2007).

When questioned in his deposition whether anyone had retaliated against him in any way, the plaintiff answered in the negative [Doc. 43-3 at 18]. In his response in opposition to the summary judgment, the plaintiff states that the DHHR took an adverse employment action against him by not promoting him [Doc. 45 at 16]. However, he has not alleged that he has participated in any protected activity or that there was any causal link between the protected activity and the decision to promote someone other than the plaintiff. As such, the plaintiff has not established a common law claim of retaliatory conduct. Accordingly, the Defendants' Motion for Summary Judgment on the plaintiff's retaliatory conduct claim against the DHHR is hereby **GRANTED**.

...

## V.  CONCLUSION

For the foregoing reasons, this Court hereby **GRANTS** the Defendants' Motion for Summary Judgment **[Doc. 42]**.  Accordingly, this matter is hereby dismissed from the active docket of this Court.

It is so **ORDERED**.

The Clerk is directed to transmit copies of this Order to all counsel of record herein.

**DATED:**  August 24, 2012.

*/s/ John Preston Bailey*
JOHN PRESTON BAILEY
CHIEF UNITED STATES DISTRICT JUDGE